UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
DAVID DOWSETT,

                Plaintiff,

- against -

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY

                Defendant.
----------------------------------------------------X

**MEMORANDUM and ORDER**

07-CV-2018 (SLT)(SMG)

**TOWNES, United States District Judge,**[1]

Plaintiff David Dowsett seeks review of a final decision of the Commissioner of Social Security ("Commissioner") finding that he voluntarily withdrew his January 1978 application for Supplemental Security Income ("SSI") in March 1978 and was, therefore, not eligible for back payments. The Commissioner has moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). For the reasons set forth below, the Commissioner's motion is granted.

## *Background*

After he was treated for attempting to commit suicide, plaintiff filed an SSI application in January 1978, seeking benefits for obsessive compulsive disorder and borderline personality disorder. Pl.'s Br. 3; R. 27, 135.[2] In March 1978, before the Social Security Administration ("SSA") made a decision on the matter, plaintiff withdrew his SSI application. R. 27.[3]

---

[1] The Court gratefully acknowledges the assistance of a student intern, Ali Russell of Boston College Law School, in the preparation of this Memorandum and Order.

[2] Numbers in parentheses preceded by "R" refer to page numbers in the record.

[3] Neither a copy of plaintiff's January 1978 SSI application nor his March 1978 withdrawal are in the record. "Due to the age of the claim, it most likely was destroyed in accordance with the agency's record retention policies." Def.'s Br. 2, n.3.

1

In October 1982, plaintiff filed a second application for SSI and became eligible that same month. Id. at 14. He also filed an application for Disability Insurance Benefits ("DIB") on October 15, 1982. Id. Although he was initially denied DIB, the SSA reconsidered his application in October 2000, pursuant to a settlement agreement reached in a class-action, see Stieberger v. Sullivan, 738 F.Supp. 716 (S.D.N.Y. 1990), and found that plaintiff was entitled to disability benefits. R. 15. Plaintiff was awarded a lump-sum retroactive payment of $32,405.30. Id.

Plaintiff received a letter from the New York Department of Health in July 2002, notifying him of the Dixon v. Shalala, 54 F.3d 1019 (2d Cir. 1995), class action, that the SSA would be reviewing applications that had been previously denied, and that, as a result, he might be eligible for Medicaid benefits. Id. at 139. Plaintiff filed a request for reconsideration under Dixon in November 2002, claiming that his withdrawal of the 1978 application was involuntary due to the medications he was taking, which yielded a "psychotic – almost incoherent mental state." Id. at 15, 27. Plaintiff alleges that because of his mental state, he was not aware he was signing withdrawal forms and mistook the forms for additional paperwork needed for the processing of his application. Id. at 27. SSA denied his request a month later, stating that since plaintiff withdrew his application in March 1978, he was not eligible for reconsideration under the Dixon decision. Id. at 24-26.

In February 2003, plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"), alleging that any forms he might have signed in March 1978 were mistaken for routine forms needed to finalize the processing of his January 1978 application. Id. at 27. In preparation for his hearing, plaintiff submitted documents relating to his history of treatment for psychiatric conditions. Most of these records came from the Creedmoor Psychiatric Center and

indicated plaintiff's treatment started in September 1979. Id. at 31-110. Center records reveal that plaintiff reported to staff that he had never been hospitalized for psychiatric treatment, but that he had received counseling at Queens Village Outpatient Department from January to March 1978, following his suicide attempt. Id. at 34, 42. Plaintiff stated he stopped the counseling after two months because he was feeling much better and because he did not like the way the medication made him feel. Id. Plaintiff also requested that Creedmoor Psychiatric Center obtain records from Queens Village Outpatient Department reflecting the counseling he received from January 1978 through March 1978; however, the Creedmoor Psychiatric Center records management department reported that "there's no available information for 1978." Id. at 32.

A hearing was held in March 2005, before ALJ Manuel Cofresi, at which plaintiff was represented by counsel. Id. at 13. After acknowledging that the sole issue before him was whether plaintiff voluntarily withdrew his 1978 application, the ALJ recognized that he first needed to determine whether plaintiff's claim related to either the Dixon or Stieberger class actions. Id. at 161, 163-64. The ALJ cited the need to reschedule the hearing, announcing that he needed to look over plaintiff's Dixon and Stieberger files before he could rule on the issue. Id. at 164-65.

Plaintiff's rehearing was never rescheduled. On August 25, 2006, the ALJ filed his decision, finding that plaintiff had not provided enough evidence to prove that his withdrawal was involuntary and, therefore, his claim was not subject to a reconsideration. Id. at 13-16.

In his February 23, 2007 request for review by the SSA Appeals Council, plaintiff requested a three-day time extension in order to obtain additional hospital records from January 1978 and a statement from the clinic that was currently counseling him. Id. at 144.

Nevertheless, plaintiff did not provide this additional information until April 20, 2007, a day before the Appeals Council denied his request for review. Id. at 5, 6.

Plaintiff then made an additional request for reconsideration by the Appeals Council, which was denied in June 2007. Id. at 3. In its denial, the Council stated that the most recent information, which was faxed on April 20, 2007 and again on May 2, 2007, was never received, but that "from the description of this additional evidence, it does not appear that it would pertain to the issue of whether the [plaintiff] knowingly withdrew his [January 1978] application." Id. at 3. Accordingly, the August 25, 2006 decision of the ALJ constituted the final decision of the Commissioner.

This action followed.

## *Discussion*

I. <u>Standard of Review</u>

This Court must review the Commissioner's factual findings in order to determine whether they are supported by substantial evidence. 42 U.S.C. § 405(g); <u>Beauvoir v. Chater</u>, 104 F.3d 1432, 1433 (2d Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Rivera v. Sullivan</u>, 923 F.2d 964, 967 (2d Cir. 1991). "To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." <u>Snell v. Apfel</u>, 177 F.3d 128, 132 (2d Cir. 1999) (quoting <u>Mongeur v. Heckler</u>, 722 F.2d 1033, 1038 (2d Cir. 1983)).

This Court must also review the ALJ's decision to determine whether the ALJ applied the correct legal standard. <u>Tejada v. Apfel</u>, 167 F.3d 770, 773 (2d Cir. 1999). "'Where an error of law has been made that might have affected the disposition of the case, this Court cannot fulfill

its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ.'" Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984) (quoting Wiggins v. Schweiker, 679 F.2d 1387, 1389 n.3 (11th Cir. 1982)). This Court reviews questions of law *de novo*. Id.

II. Legal Standard for Withdrawal of SSI Application

Section 416.355 of the SSA Regulations No. 16 governs the process for withdrawing an application. The pertinent part states as follows:

> (a) *Request for withdrawal filed before we make a determination.* If you make a request to withdraw your application before we make a determination on your claim, we will approve the request if the following requirements are met:
> (1) You or a person who may sign an application for you signs a written request to withdraw the application and files it at a place described in § 416.325.
> (2) You are alive when the request is filed.
> (c) *Effect of withdrawal.* If we approve your request to withdraw an application, we will treat the application as though you never filed it.

20 C.F.R. § 416.355. Additionally, should one choose to rescind his withdrawal, thereby reinstating his claim, he must provide notice to the agency within sixty days of filing the withdrawal of the claim. 20 C.F.R. § 416.360.

III. Application

In this case, plaintiff claims that the ALJ erred in finding that he voluntarily withdrew his January 1978 SSI application. R. 27. Plaintiff states that "the side effects of the medication [he was taking at the time] yielded a psychotic – almost incoherent mental state," and that he did not understand that the forms he signed were withdrawal forms. Id. Plaintiff also states that the ALJ's decision violated his due process right in failing to hold a rehearing, obtain plaintiff's prior records, and adhere to SSA policy governing application withdrawals. Pl.'s Br. 2, 3.

5

Plaintiff further contends he was denied his due process right by the Appeals Council's failure to consider current medical records that plaintiff had faxed to the Council. Pl.'s Br. 14.

A. ALJ's Finding of Voluntary Withdrawal

The ALJ's finding was supported by substantial evidence. Generally, in SSI claims, a claimant suffering from a mental illness may present a valid due process claim when he contends that his mental illness prevented him from "proceeding from one administrative level to another in a timely fashion." See Canales v. Sullivan, 936 F.2d 755, 758 (2d Cir. 1991). Nevertheless, the claimant must present evidence in support of his allegation. Id. at 759. In presenting evidence for a disability claim, a claimant must show that the "mental impairment by reason of which he claims to be disabled 'results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.'"[4] Cutler v. Weinberger, 516 F.2d 1282, 1286-87 (2d Cir. 1975) (quoting 42 U.S.C. § 423(d)(3)); see Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987); Franklin v. Sec'y of Health, Educ. & Welfare, 393 F.2d 640, 642 (2d Cir. 1968).

These rules should apply with equal force to a claimant alleging that his withdrawal of a SSI application was involuntary due to a mental disability, and his proof must contain more than his subjective testimony. See Cutler, 516 F.2d at 1286-87; Franklin, 393 F.2d at 642. In other words, plaintiff's allegation as to his mental state at the time of his withdrawal must be supported by medical evidence.

Although plaintiff stated that, at the time of the withdrawal, he suffered from a "psychotic – almost incoherent mental state" because of medications, plaintiff has provided no medical

---

[4] A determination of disability and benefits cannot be based solely on a claimant's subjective testimony but requires corroborating medical evidence. 42 U.S.C. § 423(d)(5)(A).

evidence to support this claim. R. 27. The records from Nassau County emergency department only indicate that plaintiff went to the hospital in January 1978 following a suicide attempt, and though plaintiff was described as depressed, he was discharged the same day and referred for outpatient counseling. Id. at 144-47. Additionally, plaintiff has no corroborating medical evidence, from Queens Village Outpatient Department or any other source, from 1978 to support his allegation. Id. at 32.

Plaintiff's extensive records from the Creedmoor Psychiatric Center shed no light on his mental state between January 1978 and March 1978. In fact, the Center's record begins in 1979, when plaintiff stated to staff that he had never been hospitalized for psychiatric treatment and discontinued counseling at Queens Village Outpatient Department because he was feeling much better and did not like the way the medication made him feel. Id. at 34, 42. He did not mention to staff at that time that he experienced a "psychotic – incoherent mental state" between January 1978 and March 1978.

Without any corroborating evidence, plaintiff relies solely on his self-serving statements made over twenty-five years after the fact. He did not present any medical evidence demonstrating that his mental condition was such that the ALJ could conclude that he involuntarily withdrew his application in 1978. Accordingly, the ALJ's finding was supported by substantial evidence.[5]

B. ALJ's Failure to Hold a Rehearing

---

[5] Plaintiff contends that his 1978 SSI application is subject to present reconsideration because he is a member of the Dixon class action. Pl.'s Br. 10. Nevertheless, since the ALJ determined plaintiff voluntarily withdrew his application, plaintiff's claim is not subject to reconsideration because Dixon only permits reconsideration of applications that were denied by SSA. See Dixon, 54 F.3d 1019 (2d Cir. 1995); R. 36.

7

Plaintiff alleges that the ALJ's failure to hold a rehearing violated his due process right. Plaintiff appeared before the ALJ on March 8, 2005; however, once plaintiff started explaining his claim to the ALJ, the ALJ realized that the Stieberger re-adjudication of plaintiff's DIB claim might affect plaintiff's current Dixon SSI benefits claim. R. 161, 163, 164-65. The ALJ, therefore, decided to "put the case over" to examine "those files." Id. at 165. The ALJ expressly stated, however, that he would look "at the medical documentation to make [a] determination" regarding plaintiff's mental state when the application was withdrawn. Id. at 164. After examining the files and considering the evidence of record, the ALJ issued a decision without scheduling a rehearing. Id. at 13-16.

The ALJ did not violate plaintiff's due process right by failing to hold a rehearing because a rehearing was unnecessary to determine plaintiff's mental state at the time of the application withdrawal. The ALJ had announced in the March 8, 2005 hearing that he would rely upon the "medical documentation" to determine plaintiff's mental state in the early months of 1978, and neither plaintiff nor his counsel objected to this method of review. Id. at 164. Additionally, there was already evidence in the record stating that there were no medical records available for 1978, and that the 1978 SSA application would have been destroyed years earlier. See Def.'s Reply Br. Ex. 1; R. 32. Since plaintiff has not indicated that he could have offered additional evidence at a rehearing, a rehearing would have been fruitless and would have shed no additional light on the issue.

Furthermore, even if granted a rehearing, it is difficult to believe that plaintiff would be able to accurately testify as to the events that took place over twenty-five years earlier, given his alleged mental incoherence at that time. Even so, since subjective statements must be supported by medical evidence, the inability of plaintiff to produce that medical evidence negated the need

for a rehearing because the ALJ already had all available evidence. See 42 U.S.C. § 423(d)(5)(A); Cutler, 516 F.2d at 1286-87.

### C. ALJ's Failure to Obtain Plaintiff's Prior Records

Plaintiff also contends that his due process right was violated because the ALJ failed to locate any files pertaining to plaintiff's 1978 SSI application. After listening to plaintiff's claim in the March 2005 hearing, the ALJ decided that "it would be a denial of due process" if he did not first look at "those files." R. 164-65. Plaintiff erroneously understood the phrase "those files" to mean files relating to his January 1978 application and subsequent withdrawal. Pl.'s Br. 9. The files to which the ALJ referred during the hearing, however, were those related to the Stieberger re-adjudication of plaintiff's DIB claim and plaintiff's current Dixon SSI benefits claim. R. 161, 163, 164-65. The ALJ was concerned that plaintiff was a member of a class-action, and therefore, the ALJ would not have jurisdiction over his case. Id. at 164. The ALJ made clear that he needed to see these files by stating, "we're going to have to put the case over and I'm going to instruct the staff to reconstruct the files and try to find the – both – I want to look at both Dixon and Steinberger [sic]." Id. at 163.

Regarding the 1978 application withdrawal, the ALJ specifically stated that he was "not certain that [plaintiff] understood that he was signing a release of that – a withdrawal of that 1978 case and so we are looking at the medical documentation to make that determination." Id. at 164. In establishing that he would consider only the medical evidence in determining plaintiff's mental state in March 1978, the ALJ already had plaintiff's medical records and needed no additional files. Id. at 165.

The ALJ did find plaintiff's file concerning the Stieberger re-adjudication of his DIB claim and plaintiff's Dixon file and referred to both in his decision. Id. at 15. Additionally, in

9

his decision, the ALJ adhered to the course of review he had discussed with plaintiff at the hearing: that he would determine plaintiff's mental state based on the available medical evidence. Id.

Plaintiff alleges that the ALJ did not obtain or make any effort to look for "the files for 1978;" yet, he identifies no records pertaining to 1978 that the ALJ could have obtained. When withdrawing an SSA application, a claimant has sixty days to rescind his withdrawal. 20 C.F.R. § 404.641. After that, the SSA treats the application as though it were never filed. 20 C.F.R. § 404.640. Plaintiff did not adhere to the sixty-day policy; instead, he waited twenty-five years before attempting to rescind the withdrawal. The SSA's customary retention policy is to destroy claims that are not active and are older than over five years old. Plaintiff's 1978 application would have, therefore, been destroyed in 1983. See Def.'s Reply Br. Ex. 1. Thus, the lack of files from 1978 results directly from plaintiff's failure to seek to rescind his withdrawal within the sixty-day period. Accordingly, there were no obtainable 1978 files for the ALJ to review.

### D. ALJ's Failure to Adhere to SSA Policy Governing Withdrawal of Application

Plaintiff next argues that the ALJ failed to follow the SSA's internal policy guidelines regarding SSI application withdrawals. Plaintiff cites certain provisions of the SSA Program Operations Manual System ("POMS") that govern application withdrawals. Although POMS acts as an internal handbook for SSA employees, the manual "is not a regulation. It has no legal force, and it does not bind the SSA." Binder & Binder PC v. Barnhart, 481 F.3d 141, 151 (2d Cir. 2007) (quoting Schweiker v. Hansen, 450 U.S. 785, 789 (1981)); see also SocialSecurity.gov, SSA's Policy Information Site – POMS, https://secure.ssa.gov/apps10/poms.nsf/aboutpoms (last visited July 2, 2009) (stating by way of disclaimer "[t]he POMS states only internal guidance. It is not intended to, does not, and may

not be relied upon to create any rights enforceable at law by any party in a civil or criminal action."). Accordingly, plaintiff's argument must fail.

Nevertheless, according to the manual, SSA employees are urged to discuss the effects of a withdrawal when a claimant will be negatively impacted in order to ensure the claimant is making an informed decision and is aware of the effects of a withdrawal. POMS GN 00206.001. Since plaintiff is challenging his 1978 SSA application withdrawal twenty-five years after the sixty-day window to rescind a withdrawal, his application information is not available. It is therefore not known whether SSA employees handling plaintiff's claim discussed the adverse effects of a withdrawal with him.

Additionally, the guidelines specify that in cases of possible mental impairment, "all available evidence" should be examined to determine whether a claimant is aware of the effects of a withdrawal. POMS GN 00206.005C2. In the hearing, and again in his decision, the ALJ specifically stated that he would review all medical records in order to determine whether plaintiff voluntarily withdrew his SSI application. R. 14-15, 164. Although the ALJ did obtain all available evidence, neither plaintiff's medical records for the early months of 1978 nor his 1978 SSA application were available. Furthermore, the ALJ correctly placed the burden on plaintiff to demonstrate that his subjective statements concerning his mental state in 1978 were corroborated by medical evidence. Accordingly, plaintiff can provide no evidence to demonstrate that the ALJ did not adhere to the guidelines, and by reviewing all "available records," the ALJ did adhere to the POMS provisions.

### E. Appeals Council's Failure to Consider Additional Evidence

Plaintiff contends that he was denied his right to due process because the Appeals Council failed to consider the current medical records that he faxed to the Council the day before

11

it released its decision to deny the petition to reopen the claim. As a general rule, "[f]ederal courts lack jurisdiction to review an administrative decision not to reopen a previous claim for benefits." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003). Thus, this Court has no subject matter jurisdiction to review this claim.

The Supreme Court has stated that a denial by the Appeals Council may be reexamined by a court if challenged on constitutional grounds; nevertheless, this is not one of those "rare instances." Califano v. Sanders, 430 U.S. 99, 108, 109 (1977); see Stieberger v. Apfel, 134 F.3d 37, 39 (2d Cir. 1997). In his request for review of the ALJ's decision, plaintiff and his counsel received notice concerning the requirements for submitting additional evidence:

> If you have additional evidence, submit it with this request for review. If you need additional time to submit evidence or legal argument, you must request an extension of the time in writing now. If you request an extension of time, you should explain the reason(s) you are unable to submit the evidence or legal argument now. If you neither submit evidence or legal argument now nor within any extension of time the Appeals Council grants, the Appeals Council will take its action based on the evidence of the record.

R. 10.

On February 23, 2007, plaintiff demonstrated that he was aware of this requirement by requesting a three-day extension to submit additional evidence. Id. at 144. Plaintiff neither submitted additional evidence during this period, nor made requests for further extensions. The Appeals Council then considered all of the evidence of record as of February 26, 2007 and was under no obligation to review the medical records that were allegedly faxed on April 20, 2007, the day before the Appeals Council rendered its decision. See 20 C.F.R. § 404.968(a),(b); Dietsch v. Schweiker, 700 F.2d 865, 867 (2d Cir. 1983).

Upon plaintiff's second request for reconsideration, the Appeals Council stated that it did not receive the additional evidence plaintiff submitted on April 20, 2007 and again on May 2, 2007. R. 3, 5. Nevertheless, in denying plaintiff's request, the Council stated "from the description of this additional evidence, it does not appear that it would pertain to the issue of whether the claimant knowingly withdrew his application of January 24, 1978." Id. at 3, 5. Nothing in the record rebuts this characterization.

Plaintiff offers no reason for his failure to submit the medical records during the three-day extension period in February 2007 or to request an additional extension. Plaintiff and his counsel were aware of the Appeals Council's extension process and simply failed to adhere to it. See id. at 10, 11-12. Furthermore, in denying plaintiff's second request for reconsideration, the Appeals Council decided plaintiff's additional evidence "does not appear [to] pertain to the issue." Id. at 3.

### *Conclusion*

There was sufficient evidence in the record to support the ALJ's decision. Accordingly, the Commissioner's motion for judgment on the pleadings is granted. The Clerk of Court is directed to close this case.

SO ORDERED.

s/Sandra L. Townes

SANDRA L. TOWNES
United States District Judge

Dated: August 31, 2009
Brooklyn, New York

13